UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CARALEE JOY S.,[1]<br><br>        Petitioner,<br><br>   v.<br><br>KILOLO KIJAKAZI, Acting<br>Commissioner of Social Security<br>Administration,[2]<br><br>        Respondent. | Case No. 1:20-cv-00231-CWD<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

**INTRODUCTION**

Pending before the Court for consideration is Caralee S.'s Petition for Review of the Respondent's denial of social security benefits, filed on May 15, 2020. (Dkt. 1.) The Court has reviewed the Petition for Review, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, will affirm the decision of the Commissioner.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Kilolo Kijakazi is substituted for Andrew Saul pursuant to Federal Rule of Civil Procedure 25(d). Kijakazi became the Acting Commissioner of Social Security Administration on July 9, 2021.

**MEMORANDUM DECISION AND ORDER - 1**

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed a Title XIV application for supplemental security income on December 30, 2016, claiming disability beginning November 14, 1991. The application was denied initially and on reconsideration, and a hearing was conducted on March 28, 2019, before Administrative Law Judge (ALJ) Corinne McLaughlin. After considering testimony from Petitioner, Petitioner's mother, and a vocational expert, ALJ McLaughlin issued a decision on May 2, 2019, finding Petitioner has not been under a disability since the amended onset date of December 30, 2016. Petitioner timely requested review by the Appeals Council, which denied her request for review on March 30, 2020.

Petitioner timely appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time the ALJ issued her written determination, Petitioner was twenty-seven years of age. Petitioner graduated from high school; she has no past relevant work that rose to the level of substantial gainful activity.

## STANDARD OF REVIEW

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports Petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

## DISCUSSION

The following issues are raised on appeal:

1.   Did the ALJ properly consider Petitioner's supportive living and work environments?

2.   Did the ALJ properly evaluate the medical opinions of Dale Grossman, Ph.D., L.P., John Husxahl, M.D., and John O'Regan, Ph.D.?

Petitioner currently works approximately 25 hours each week, and has maintained part-time employment below the level of substantial gainful activity. She argues that the

**MEMORANDUM DECISION AND ORDER - 3**

ALJ erred because she did not consider Petitioner's supportive living and work environments, including the need for a service dog, and that her current level of functioning is only attained with support. Petitioner argues also that the ALJ did not properly evaluate the medical opinions of two treating mental health providers, Drs. Grossman and Husxahl, as well as the consultative psychological examiner, Dr. O'Regan, all of whom opined Petitioner would be unable to sustain full-time, competitive employment.

The Court has reviewed the record, and finds that, while there is some evidence supporting Petitioner's claims, the ALJ did not commit error. The ALJ considered Petitioner's supportive living and work environments, finding the evidence was not consistent with her need for the same. (AR 31.) The Court finds also that the ALJ provided specific and legitimate reasons supported by substantial evidence in the record for giving little weight to the three medical opinions at issue on this appeal. Although there may be some support for Petitioner's interpretation of the evidence, the Court may not substitute its judgment for that of the Commissioner. The Court's findings are further explained below.

## 1.    Supportive Living and Working Environment

The ALJ found Petitioner has the following severe impairments: neurofibromatosis type 1 (NK1); Klippel-Feil syndrome with migraine headaches, fatigue, low weight, and pain; attention deficit hyperactivity disorder (ADHD); generalized anxiety disorder; borderline intellectual functioning; and food intake

**MEMORANDUM DECISION AND ORDER - 4**

disorder. (AR 18.)

The ALJ determined that Petitioner retained the residual functional capacity (RFC) to perform light work with some physical and mental limitations. The ALJ found Petitioner could understand, remember, and carry out simple, routine instructions and tasks, and could have frequent interaction with supervisors and coworkers, and occasional interaction with the general public. The ALJ limited Petitioner to low stress work, defined as work involving only occasional changes in the work setting, with no hourly production quotas, although daily quotas would be acceptable. (AR 23.)

Petitioner argues that, even assuming the ALJ's RFC assessment is correct, the ALJ neglected to address whether Petitioner can engage in full-time competitive employment. Specifically, Petitioner asserts that she is currently functioning successfully in part-time employment with significant support from her mother, a personal care assistant, other family members, and a service dog, and that she cannot maintain full-time competitive employment. Petitioner contends also that the ALJ committed error because she failed to account for the vocational effects of Petitioner's need for a service animal in the workplace, citing *Santos v. Colvin*, No. 3:12-cv-05827-KLS, 2013 WL 5176846 (W.D. Wash. Sept. 12, 2013).

Respondent argues the ALJ considered the level of support Petitioner receives, but rejected Petitioner's assertion that she could not sustain competitive, full-time employment based upon clear and convincing reasons supported by substantial evidence in the record. Respondent notes the ALJ considered Petitioner's successful course of

treatment; her range of activities; benign medical findings; and the absence of evidence

supporting the need for a service dog in the workplace, distinguishing *Santos.*

The ALJ's reasons are well supported by the record. The ALJ recounted

Petitioner's medical history in great detail, including in her discussion a description of

Petitioner's activities and treatment history. (AR 23 – 31.) The ALJ concluded Petitioner

retained the ability to work a full time schedule with 8-hour shifts within the parameters

of the RFC limitations based upon the limited medical findings and her course of

treatment, as well as the wide range of activities she engaged in while also working 7-

hour shifts on a part-time schedule. (AR 31.)

For example, although Petitioner suffers from several chronic medical conditions,

the ALJ explained that treatment providers had consistently noted her physical and

mental health conditions were stable after undergoing successful treatment. A physical

examination in March of 2017 indicated a mostly normal examination, and Petitioner's

treating physician documented that her neurofibromatosis was stable. (AR 25.) In July of

2017, Petitioner's low body weight was successfully addressed with therapy and dietary

consultations, which in turn resolved her headache symptoms. (AR 26.) Mental health

treatment in 2016 consisted of monthly therapy visits and medication management. (AR

27.) In 2017, Petitioner reportedly was managing her mental health symptoms well with

medication. (AR 29.) In 2018, medical records revealed monthly therapy visits because

she had not presented with many concerns. (AR 30.)

Next, the ALJ discussed Petitioner's activity level. The ALJ recognized

Petitioner's cognitive limitations, but noted that, while living in Minnesota in 2017, Petitioner was working twenty hours each week at JCPenney, volunteering at a hospital, and had successfully completed a certificate program at Century College. (AR 28, 30.) Although she had a community action plan while she lived in Minnesota, the ALJ noted that the plan provided only minimal supportive services for health monitoring, developing social skills, transportation, and encouraging exercise. (AR 30.)

At the time of the hearing, Petitioner was living by herself in an apartment in Idaho with her service dog, and working at a veterinary clinic for twenty-five hours each week performing clerical work. (AR 20.)[3] Petitioner's mother, who lives in Minnesota, testified that she calls Petitioner daily to check on her, reminds her to clean her apartment, and assists her with budgeting. (AR 812.) Petitioner's mother also provides financial support. Petitioner testified that her cousin, who lived nearby, assisted her and that her mother had hired a personal care assistant who, once each week, helped her go grocery shopping and checked to make sure she was doing well. (AR 20.) Petitioner does not drive, and she utilizes public transportation or a ride service arranged through her Community Action Plan, or receives rides from family members. (AR 20.)

The ALJ pointed out Petitioner is able to attend to all activities of daily living as well as complete chores such as laundry and making her bed. (AR 28.) The ALJ remarked that Petitioner successfully moved to Idaho in 2018, and is able to work, live

---

[3] Petitioner moved from Minnesota to Idaho in 2018, and began working for the veterinary clinic on July 12, 2018. (AR 245, 797.) Prior to that time she lived in an apartment in Minnesota near her parents' home. (AR 28.)

**MEMORANDUM DECISION AND ORDER - 7**

alone in an apartment, spend time with friends, shop, attend church, take public transportation, and otherwise care for herself. (AR 31.) She was denied any special services by the State of Idaho and her mother had not appointed a guardian for her daughter after the move. (AR 30.) Finally, the ALJ observed that, although Petitioner reported receiving special accommodations at the veterinary clinic where she worked, such as being able to make up work as needed, there was no documentary evidence to support the need for special work conditions, and there was no evidence she needed any special accommodations from previous employers. (AR 31.)

The ALJ considered Petitioner's treatment history, minimal mental status examinations, findings that her symptoms were generally well controlled with medications, and Petitioner's activity level supportive of his determination that she could sustain full-time, competitive employment. (AR 30.) The Court's independent review of the administrative record confirms the ALJ's findings.

Last, the ALJ discussed Petitioner's service dog. Although Petitioner was permitted to bring her service dog to work with her at the veterinary clinic, the ALJ observed there was no evidence to support the need for the dog to accompany her to work. (AR 31.) The ALJ pointed out that Petitioner was previously able to work at JCPenney waiting on customers, and that she received no special accommodations from her employer. (AR 27, 28.) The record does not indicate that any medical provider recommended the use of a service dog, nor does the record contain evidence that Petitioner's use of a service dog is medically necessary. (AR 25 – 30.) Further, the record

**MEMORANDUM DECISION AND ORDER - 8**

contains no evidence concerning what the dog does for Petitioner, other than Petitioner's remark in her opening brief that the animal provides emotional support.

The evidence in the record before the Court regarding Petitioner's service dog is in contrast with the evidence reviewed by the court in *Santos,* where there was some evidence that medical providers documented that the use of a service dog was of significant benefit, and that the claimant's mental health symptoms were "well controlled with the help of his service dog." 2013 WL 5176846 at *5. Santos's medical providers also provided a letter supporting the claimant's need for a service dog. *Id.* Here, there is no evidence in the record from any medical provider that Petitioner's service dog was medically necessary, or that working without her service dog would cause her to experience significant adverse effects in the workplace. There is also no indication in the record that Petitioner could not work full time at the veterinary clinic either with or without her service dog.

Accordingly, based upon the record, the Court finds the ALJ did not err in implicitly discounting Petitioner's contention that she required the use of a service dog in the workplace.

## 2.   **Medical Opinions**

Petitioner argues the ALJ improperly weighed the medical opinion evidence, contending that the ALJ committed reversible error in his evaluation of the opinions of treating providers Dale Grossman, Ph.D., L.P., John Huxsahl, M.D.; and consultative examiner John O'Regan, Ph.D. Petitioner makes two arguments. First, she contends the

**MEMORANDUM DECISION AND ORDER - 9**

ALJ failed to consider the factors set forth in 20 C.F.R. § 416.927 for evaluating medical opinions. Second, she contends the ALJ selectively read the record to reach the conclusion that Petitioner's limitations were inconsistent with the medical evidence of record. Petitioner argues that the record, when considered as a whole, demonstrated Petitioner required a supportive environment and could not sustain competitive, full-time employment as a result.

Respondent counters that the ALJ applied the correct standard when weighing the conflicting medical opinions in the record, and provided specific and legitimate reasons supported by substantial evidence in the record for giving the three opinions at issue little weight.

The Court finds the ALJ's evaluation of the opinion evidence regarding Petitioner's limitations is supported by substantial evidence in the record. Accordingly, the Court will not disturb the ALJ's findings, as explained below.

### A.   Applicable Standard

In social security cases, there are three types of medical opinions: "those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec.*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. §

**MEMORANDUM DECISION AND ORDER - 10**

404.1527(c)(2)); *see also* SSR 96-2p, 1996 WL 374188, at *1 (S.S.A. July 2, 1996)

(stating that a well-supported opinion by a treating source which is not inconsistent with

other substantial evidence in the case record "must be given controlling weight; i.e. it

must be adopted.").

Generally, a treating physician's opinion carries more weight than an examining

physician's opinion, and an examining physician's opinion carries more weight than a

non-examining, reviewing physician's opinion. *Holohan v. Massanari*, 246 F.3d 1195,

1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(d). In addition, the regulations give more

weight to opinions that are explained than to those that are not, *see* 20 C.F.R. §

404.1527(d)(3), and to the opinions of specialists concerning matters relating to their

specialty over that of nonspecialists, *see id*. § 404.1527(d)(5).[4]

Should the ALJ decide not to give a treating physician's opinion controlling

weight, the ALJ must weigh it according to factors such as the nature, extent, and length

of the physician-patient relationship, the frequency of evaluations, whether the

physician's opinion is supported by and consistent with the record, and the specialization

of the physician. *Trevizo*, 871 F.3d at 676; *see* 20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2).[5]

---

[4] The agency has amended the regulations governing medical opinions, but they apply only to claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c. The ALJ correctly applied the rules applicable to Petitioner's claim, which was filed on December 30, 2016. *See* 20 C.F.R. § 404.1527.

[5] Social Security regulations provide that, when a treating source's opinions are not given controlling weight, ALJs must apply the factors set forth in 20 C.F.R. § 404.1527(c)(2)(i-ii) and (c)(3–6) in determining how much weight to give each opinion. These factors are length of the treatment relationship and the frequency of examination, § 404.1527(c)(2)(i), nature and extent of the treatment relationship, § 404.1527(c)(2)(ii), supportability, § 404.1527(c)(3), consistency, § 404.1527(c)(4),

Although a "treating physician's opinion is entitled to 'substantial weight,'" *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citation omitted), it is "not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Rather, an ALJ may reject the uncontradicted opinion of a treating physician by stating "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

However, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198 (citation omitted); *see also* SSR 96-2P, 1996 WL 374188 at *5 ("[T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

---

specialization, § 404.1527(c)(5), and other factors that tend to support or contradict the opinion, § 404.1527(c)(6).

**MEMORANDUM DECISION AND ORDER - 12**

**B.  *Dr. Grossman***

Treating therapist Dale Grossman, Ph.D., L.P., provided an opinion dated April 4, 2017, indicating he has known Petitioner since she was ten years old and that he has worked with her "intermittently throughout the course of her life." (AR 498.) She stated that Petitioner tires easily and becomes highly anxious and irritable, her gross and fine motor abilities are impaired, and that she is intellectually limited. (AR 498, 499.) Dr. Grossman completed a Mental Medical Source statement documenting that she has treated Petitioner since February 16, 2001, with the most recent visit being September 27, 2016.

Dr. Grossman was of the opinion that Petitioner had marked limitations in the following areas: ability to complete a normal workday and work week, without interruptions from psychologically based symptoms; ability to perform at a consistent pace without an unreasonable number and length of rest periods; and ability to tolerate normal levels of stress. (AR 500.) She also was of the opinion that Petitioner would require more than the standard 15-minute breaks afforded during a typical 8-hour work day, because Petitioner tires easily and her anxiety increases as a result, and that Petitioner would miss two work days each month. (AR 501.) Finally, Dr. Grossman indicated that Petitioner's medical conditions cause "more than a minimal limitation of ability to do any basic work activity," and that her disease process has resulted in such "marginal adjustment" that Petitioner could not tolerate even a minimal increase in mental demands, and that Petitioner has a history of one or more years' inability to

MEMORANDUM DECISION AND ORDER - 13

function outside of a "hugely supportive living arrangement with an indication of continued need for such an arrangement." (AR 501.)

The ALJ acknowledged Dr. Grossman as one of Petitioner's treating providers. (AR 32.) He gave little weight to her opinions for several reasons, however. First, the ALJ found that Dr. Grossman's statements about Petitioner tiring easily, becoming anxious, and being intellectually limited were vague in terms of frequency, duration, severity, and impact upon work activities. Second, the ALJ found that the limitations and symptoms noted on the form Dr. Grossman completed were inconsistent with the lack of significant mental status examination findings in the medical records by Grossman and other mental health providers, Petitioner's activity level, and Petitioner's ongoing part time work schedule. Third, the ALJ accepted Dr. Grossman's opinions regarding moderate limitations in other areas, but specifically found that her opinions regarding marked limitations in persistence, pace, and stress tolerance were not consistent with the minimal mental health status findings contained in the record; the limited course of mental health treatment provided to Petitioner by Grossman and other mental health providers; and Petitioner's activities of daily living. Finally, the ALJ noted the opinions regarding Petitioner's need for a highly supportive living environment were not consistent with Petitioner's current independent living situation in Idaho, which Petitioner manages with only weekly check-ins from a personal care assistant and some informal assistance from Petitioner's cousin.

The Court finds the reasons provided by the ALJ for assigning little weight to the

**MEMORANDUM DECISION AND ORDER - 14**

opinions of Dr. Grossman are specific, legitimate reasons supported by substantial

evidence in the record. The record demonstrates Petitioner successfully completed a job

coaching program in 2016 through vocational rehabilitation services, and it was

determined she no longer needed further job coaching. (AR 27.)  In 2016 and 2017,

Petitioner worked for JCPenney for 20 - 25 hours each week, working eight-hour shifts.

(AR 27, 28, 813.) During this same time period, Petitioner also attended two classes at a

local community college each semester and completed a certificate for office work, lived

independently, and volunteered at a hospital for a few hours each week. (AR 24, 25.) In

2018, Petitioner moved to Idaho, lived by herself in an apartment, and required only

weekly visits from a personal care assistant who helped her grocery shop. (AR 24, 30,

31.) She was working 7-hour shifts on a part-time basis for All Valley Animal Care

Center.

Dr. Grossman's therapy records showed Petitioner was going to therapy monthly

in 2016, with a plan to schedule as needed. (AR 27.) Dr. Grossman's notes from sessions

in 2016 indicated Petitioner talked mostly about relationship problems with her fiancé,

and that his parents were causing her anxiety. (AR 457, 460.) Dr. Grossman's mental

status examinations throughout 2016 did not record significant findings other than

general assertions of "anxiety," or that Petitioner was "snapping" and "controlling." (AR

460.) Other records from her treating psychiatrist in August 2016 showed she required

only annual visits to manage her psychotropic medications, and that she demonstrated

normal alertness, orientation, and affect, with no obvious signs of anxiety or depression.

**MEMORANDUM DECISION AND ORDER - 15**

(AR 27.)

The Court's review of the record provides ample support for the ALJ's assessment that Dr. Grossman's opinions deserved little weight. All of the ALJ's reasons are consistent with the record and demonstrate the ALJ considered the factors set forth in 20 C.F.R. § 404.1527(c)(2). The ALJ commented on the infrequency of examinations; the lack of supportability of the doctor's opinions with reference to Dr. Grossman's treatment records; and the inconsistency of the opinions with reference to both Dr. Grossman's treatment records and the record as a whole showing Petitioner was simultaneously able to engage in a wide range of activities while working part time. Other factors such as Petitioner's current living situation outside of a "highly supportive" living environment provide support for the ALJ's conclusions. The Court finds no error.

### C.   *John Huxsahl, M.D.*

Treating psychiatrist John Huxsahl indicated Petitioner had been his patient for several years. He provided a letter dated October 31, 2018, expressing his opinions that Petitioner "has never been able to successfully work 8-hour days," and that she has difficulty sustaining focus and attention for that length of time. He also was of the opinion that Petitioner has difficulty with fatigue that would interfere with sustaining a work day of 8 hours. (AR 530.) The mental medical source statement Dr. Huxsahl completed indicated that Petitioner's frequent fatigue and inability to concentrate would impact Petitioner's ability to sustain work. (AR 531.)

Dr. Huxsahl assessed marked limitations in two functional areas, indicating

Petitioner would have difficulty in maintaining attention and concentration for more than two-hour segments, and working in coordination with, or proximity to, others without being distracted by them. (AR 532.) In other areas, Dr. Huxsahl assessed moderate or mild limitations. (AR 532.) Consistent with Dr. Grossman, Dr. Huxsahl was of the opinion Petitioner would need more than the standard 15-minute breaks throughout each work day (as many as five), and would miss more than three days of work each month. (AR 533.) Dr. Huxshal also noted Petitioner required a highly structured setting to diminish the symptoms and signs of Petitioner's mental disorder. (AR 533.)

The ALJ assigned little weight to Dr. Huxsahl's opinions for several reasons. First, the ALJ found that Dr. Huxsahl's examination records offered little in the way of regular symptom reports or objective findings, and that his infrequent treatment records did not support his conclusory statement about an inability to sustain full time work. (AR 32.) The ALJ found the opinions concerning marked limits in maintaining attention and concentration and working with others were inconsistent with Petitioner's customer service positions and up to 7-hour shifts with half hour lunch breaks. (AR 32.) And last, the ALJ found that Dr. Huxsahl's conclusions were not supported by his treatment records or other medical treatment records, which showed good control of mental health symptoms, good attention for up to 10 hours at a time with medication, and no findings consistent with ongoing tiredness, fatigue, or drowsiness. (AR 33.)

The Court finds the ALJ provided legally sufficient reasons supported by substantial evidence in the record for assigning Dr. Huxsahl's opinions little weight. The

**MEMORANDUM DECISION AND ORDER - 17**

ALJ thoroughly examined the treatment history contained in the records maintained by

Dr. Huxsahl and others, which revealed evidence that the impairment from psychological

and physical symptoms was well controlled. For example, the ALJ discussed Dr.

Huxsahl's treatment notes from June 8, 2017, which indicated Dr. Huxsahl saw Petitioner

for an annual visit. (AR 514, 29.)  During this visit, Petitioner reported that her dose of

Concerta afforded good benefit for her attention issues, that she was working 20 – 30

hours each week at JCPenney, and that she had completed an associate degree in medical

office work. (AR 515.) The ALJ noted also that, at this office visit, Dr. Huxsahl did not

observe symptoms of depression, although he noted some symptoms of increased

anxiety. (AR 515, 29.)

Petitioner did not follow up with Dr. Huxsahl again until March 29, 2018. (AR

707, 30.) The ALJ discussed this progress record as well, noting that Dr. Huxsahl did not

change Petitioner's medications. (AR 30.) Dr. Huxsahl recorded that Petitioner was

experiencing some anxiety but denied depression and suicidal ideation. (AR 707, 708.)

Dr. Huxsahl reported that Petitioner was actively seeking employment in the medical

field, and working slightly less at JCPenney. (AR 707.) A later treatment note from

October of 2018, also discussed by the ALJ, recorded that Petitioner had moved to Idaho

and was doing well. (AR 30.) A preventative examination from September 2018

documented normal mental status examination findings. (AR 30.)

The ALJ thoroughly examined the treatment history contained in the records

maintained by Dr. Huxshal, which revealed some evidence of impairment from

**MEMORANDUM DECISION AND ORDER - 18**

psychological symptoms, but generally reflected normal mental health status examinations and that Petitioner's symptoms were well managed by medications. Treatment records revealed also that Petitioner was working up to 7 hours[6] each shift at JCPenney with no reported problems. (AR 31, 32.) The ALJ documented the infrequency of Dr. Huxshal's examinations, and the fact that his opinions were not supported by or consistent with the record as a whole. The Court therefore finds the ALJ appropriately applied the factors set forth in 20 C.F.R. § 404.1527(c)(2), and supported her conclusion with specific and legitimate reasons finding substantial support in the record. Accordingly, the Court finds no error.

### D.   *John O'Regan, Ph.D.*

John O'Regan performed a consultative examination on April 9, 2013, at the request of Minnesota Disability Determination Services. (AR 440.) Dr. O'Regan interviewed Petitioner, and had the opportunity to review two progress notes from the Mayo Clinic. Petitioner described a typical day, which at that time consisted of attending classes in the mornings and the evenings, walking her dog, watching TV, and working on her computer. (AR 441 – 442.) She was living by herself in an apartment. (AR 442.) Petitioner reported having many friends, and a boyfriend. (AR 442.) Dr. O'Regan observed symptoms of mild anxiety. (AR 443.) He administered several cognitive tests, including the Wechsler Adult Intelligence Scale. (AR 443 – 444.) Petitioner's scores revealed she was in the borderline range of intellectual functioning, with weaknesses in

---

[6] Petitioner's mother testified her daughter worked eight-hour shifts at JCPenney. (AR 813.)

working memory but with relative strengths on tasks requiring word knowledge and concept formation. (AR 444.) He was of the opinion Petitioner put forth good effort on the tests. (AR 444.)

Dr. O'Regan provided a medical source statement based upon her then current functioning, giving his opinion that Petitioner has the mental capacity to understand, remember, and follow simple instructions and that her capacity to sustain attention and concentration is mildly impaired. (AR 445.) He additionally opined Petitioner would be able to carry out work-like tasks with reasonable pace or persistence, but would require a supportive or sheltered work environment due to symptoms of anxiety. (AR 446.) He also was of the opinion Petitioner would not be able to tolerate workplace stressors. (AR 446.)

The ALJ gave little weight to Dr. O'Regan's opinions primarily because the examination was conducted several years before the amended onset date of December 30, 2016, and Dr. O'Regan's conclusions were not consistent with the record regarding Petitioner's mental functioning from the amended onset date to the date of the hearing. (AR 33.) The ALJ remarked that the record demonstrated Petitioner could engage in work activities and tolerate normal stresses of work outside of a sheltered environment, and that Petitioner's anxiety was well controlled with medications and had been addressed through therapy. (AR 33.) The ALJ noted also that Petitioner no longer utilized the services of multiple personal care assistants, and her activities of daily living were inconsistent with Dr. O'Regan's opinions and observations from 2013.

The Court finds the ALJ's reasons are specific, legitimate, and well supported

**MEMORANDUM DECISION AND ORDER - 20**

upon review of the record as a whole. The ALJ discussed Petitioner's functioning between 2016 and 2018, which demonstrated a much greater physical and mental capacity than did Petitioner's activities and level of functioning in 2013. (AR 25 – 30.) Since then, Petitioner demonstrated she could work part-time, attend school and volunteer. Petitioner had successfully moved to Idaho in 2018, and was living independently with minimal assistance from family and weekly check-ins by a personal care assistant, as discussed above. "Medical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r, Soc. Sec. Admin*., 533 F.3d 1155, 1165 (9th Cir. 2008). Further, evidence of improvement is a valid reason to discount a medical opinion. *Morgan v. Comm'r of Soc. Sec. Admin*., 169 F.3d 595, 601 (9th Cir. 1999).

In sum, the Court finds the ALJ gave specific, legitimate reasons supported by substantial evidence in the record for assigning the opinions of  Grossman, Huxsahl, and O'Regan little weight. The ALJ relied upon a review of the medical records as a whole, as well as the medical opinions of Dr. Warner and the state agency psychological consultant on reconsideration. (AR 29, 31.) This constitutes substantial evidence, and the Court finds the ALJ met his burden assigning the three opinions at issue little weight. In light of the Court's conclusions, the Court finds the ALJ's RFC assessment to be free from legal error and supported by his evaluation of the medical opinion evidence in the record.

**MEMORANDUM DECISION AND ORDER - 21**

## CONCLUSION

Based on the above, the Court will affirm the Commissioner's decision.


## ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises,

**it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is

not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the

petition for review is **DISMISSED**.


DATED: October 19, 2021

Honorable Candy W. Dale
Chief United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 22**